UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| MATTHEW INGRAM, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5:06-246-JMH |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION and ORDER** |
| NACCO MATERIALS HANDLING | ) | |
| GROUP, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

** ** ** ** **

This matter is before the Court on Defendant's motion for summary judgment [Record No. 38]. Having been fully briefed, the matter is now ripe for review.

## I. Background

Plaintiff Matthew Ingram ("Plaintiff" or "Ingram") was a full-time assembler for the defendant, NACCO Materials Handling Group, Inc. ("NMHG" or "Defendant"), for whom he began working in July of 2003. On November 30, 2005, Mr. Ingram received a final warning regarding an attendance problem, and was instructed to contact his supervisor prior to his shift if ever he was unable to work his regularly scheduled hours. Mr. Ingram was informed that he would be discharged if he failed to comply with the final warning. Immediately prior to his termination, Plaintiff's supervisor was Howard Lehto.

After working his shift on Tuesday, December 20, 2005, Plaintiff experienced chest pains and a rapid heart beat, causing

him to seek treatment at Pattie A. Clay Hospital's emergency room. The emergency room doctor told Plaintiff to see a cardiologist as soon as possible. Ingram claims he left two messages for his supervisor stating that he had been to the emergency room and needed medical leave, one before his shift on December 21, and another before his shift on December 22. NMHG only acknowledges receiving the later message and does not believe medical leave was requested. Plaintiff returned to the emergency room on December 27, 2005, this time for chest pains, heart palpitations, and vertigo. Again, he was instructed to see a cardiologist as soon as possible. No medical excuse was given, due to NMHG being closed from December 23, 2005, until January 2, 2006, for the holiday season.

Plaintiff saw a cardiologist, Dr. Morris, on December 29, 2005, where he was given a note instructing him to see a general practitioner. This note did not excuse him from work. On January 3, 2006, Ingram states that he left another message for his supervisor, although NMHG again denies receiving the message. Dr. Morris performed further tests on Plaintiff on January 4, 2006, and recommended that Ingram see his family doctor, as Dr. Morris believed that Ingram suffered from a phobia of some sort.

On January 5, 2005, Dr. Dionisio diagnosed Plaintiff with "anxiety disorder" and told him he was unable to work. Dr. Dionisio stated that Plaintiff's symptoms likely began one month

2

before she examined him, which was December 2005.  Dr. Dionisio also recorded in her medical records that she gave Plaintiff an excuse from work until January 12, 2006.  Ingram left another disputed message for his supervisor on January 6, 2006.

On January 11, 2006, Ingram received a letter from Dennis Creekmore, the human resources manager for NMHG, which stated that if Mr. Creekmore was not contacted within three days, Ingram would be dismissed due to his unexcused absences.  Plaintiff called Mr. Creekmore on January 12, 2006 and set up an appointment for January 13, 2006.  Dr. Dionisio saw Ingram again on January 12, 2006, where she diagnosed him with panic attacks, and again recorded in her medical records that he was unable to work.  Dr. Dionisio gave Plaintiff a note excusing him from work through January 26, 2006.

At the meeting with Mr. Creekmore, Ingram was informed that he had not filled out the paperwork necessary for FMLA leave.  At that time, Ingram presented the doctors' notes to Mr. Creekmore.  On January 16, 2006, Ingram's employment with NMHG was terminated for excessive absenteeism, pursuant to the final warning.

By this action, Plaintiff contends that Defendant interfered with his right to medical leave when his employment was terminated after Plaintiff gave notice of his intent to take leave, in violation of 29 U.S.C. § 2601 et seq., the Family Medical Leave Act ("FMLA").

## II.  Standard of Review

3

A grant of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   Fed.R.Civ.P. 56(c).

The moving party bears the initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  This burden is met simply by showing the court that there is an absence of evidence on a material fact on which the nonmoving party has the ultimate burden of proof at trial. *Id.* at 325.  The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).  A material fact is one that may affect the outcome of the issue at trial, as determined by substantive law.  *Celotex*, 477 U.S. at 325.

When determining if summary judgment is proper, the Court's function is not to weigh the evidence, but to decide whether there are genuine factual issues for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Multimedia 2000, Inc. v. Attard*, 374 F.3d 377, 380 (6th Cir. 2004).  A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows "that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248; *Summers v. Leis*,

4

368 F.3d 881, 885 (6th Cir. 2004).    The evidence should be construed in the light most favorable to the nonmoving party when deciding whether there is enough evidence to overcome summary judgment.  *Anderson*, 477 U.S. at 255; *Summers*, 368 F.3d at 885. While this Court must draw all inferences in a light most favorable to the plaintiff, summary judgment may be granted "if the record, taken as a whole, could not lead a rational trier of fact to find for [the plaintiff]."  *McKinnie v. Roadway Express*, 341 F.3d 554, 557 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III.  Analysis

The FMLA entitles eligible employees to a total of twelve workweeks of leave for: 1) the birth of a son or daughter; 2) placement of a son or daughter in adoption or foster care; 3) care for a spouse, child, or parent who has a serious health condition; or 4) because of a serious health condition for which the employee is unable to perform the functions of his position. *See* 29 U.S.C. § 2612(a).  It is unlawful for an employer to interfere with an employee's exercise of his rights under the FMLA or to discriminate against an employee for having exercised his rights under the FMLA. 29 U.S.C. § 2615(a).

To prevail on his claim that Defendant interfered with his FMLA rights, Ingram must prove: 1) he is an eligible employee; 2) the defendant, NMHG, is an employer as defined by the FMLA; 3)

5

Ingram was entitled to leave under the FMLA; 4) Ingram gave notice of his intention to take leave under the FMLA; and 5) NMHG denied Ingram benefits to which he was entitled.  *See* 29 U.S.C. § 2615(a)(1); *See also Edgar v. JAC Products, Inc.,* 443 F.3d 501, 507 (6th Cir. 2006).

The first two prongs of the interference claim are met, as Defendant admits to being an employer within the meaning of the FMLA and does not contest Plaintiff's status as an eligible employee.  Only if the third and fourth requirements are met, can the fifth requirement be satisfied.  This leaves only the questions of whether or not Ingram was entitled to leave and whether or not he gave notice as required under the FMLA.

### A.  Entitlement to Leave

Due to the facts of the case, the only entitlement for which Plaintiff qualifies is leave due to "a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).  This requires Ingram to have both a "serious health condition" and to be unable to perform the functions of his position.  The FMLA defines a serious health condition as "an illness, injury, impairment, or physical or mental condition that involves inpatient care in a hospital, hospice, or residential medical care facility; or continuing treatment by a health care provider."  29 U.S.C. § 2611(11).  Since Ingram does not claim to have received any

6

inpatient care, it must be determined if he received continuing treatment by a healthcare provider.

Federal regulations define "continuing treatment by a health care provider" as a period of incapacity for three or more consecutive days and any subsequent treatment or incapacity involving either: "(A) Treatment two or more times by a health care provider . . .; or (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the healthcare provider." 29 C.F.R. § 825.114 (1995). Incapacity is defined as the "inability to work, attend school or perform other regular daily activities due to the serious health condition." 29 C.F.R. § 825.114(a)(2)(i). The inability to perform daily activities only requires the employee to be unable to perform any one of the essential functions of that employee's position. 29 C.F.R. § 825.115. Finally, a treatment is valid under the FMLA even if its purpose is only to "determine if a serious health condition exists." 29 C.F.R. § 825.114(b).

As clearly shown by the notes of his treating physician, Dr. Dionisio, Plaintiff was incapacitated from January 5, 2006, until January 26, 2006. However, Ingram's first instance of absenteeism after his final warning was issued occurred on December 21, 2005. After excluding the time period that NMHG was on its holiday break, it is clear that Ingram missed three work days - December 21 and

7

22, 2005 and January 3, 2006 - before any physician determined it was necessary for him to be excused from working. It is these three work days which constitute the relevant time period for determining Plaintiff's entitlement to FMLA leave. Ingram's doctors' notes prior to January 5, 2006, state the plaintiff's condition to be heart palpitations, atypical chest pains, and vertigo, and instruct Ingram to see a cardiologist; however, these notes do not indicate that it was necessary for Ingram to be off work. In fact, both doctors' notes from December of 2005 included sections designated for "work/school" excuses and both were left blank.

As evidence of his incapacitation and inability to work on December 21 and 22, 2005, Plaintiff points to statements made by Dr. Dionisio during her deposition that Plaintiff's serious health condition began in December and that the he could not have performed the functions of his job, or any job, at that time. NMHG argues that Dr. Dionisio's statement that Ingram suffered from a serious health condition during the relevant time period is insufficient to demonstrate his entitlement to FMLA leave, as Dr. Dionisio did not even examine Ingram until after the relevant time period.

In support of its argument that Dr. Dionisio's after-the-fact opinion that Plaintiff was incapacitated during the relevant time period does not show that Plaintiff was entitled to FMLA leave

8

during the relevant time period, NMHG cites to *Brannon v. OshKosh B'Gosh, Inc.,* 897 F.Supp. 1028 (M.D. Tenn. 1995). In *Brannon*, the court stated that a doctor's speculation afer-the-fact that an employee should have missed work cannot prove the absences were necessary. *Brannon,* 897 F.Supp. at 1037. Ingram points out, however, that in *Olsen v. Ohio Edison Co.,* 979 F.Supp. 1159 (N.D. Ohio, 1997), the Northern District of Ohio indicated that the medical determination that an employee suffers from a serious health condition "need not be made at any particular stage of the illness or at any particular point post-injury." *Olsen*, 979 F.Supp. at 1166 n. 11.

It does not appear that either the Sixth Circuit Court of Appeals or either District of Kentucky have directly taken up the issue of whether an after-the-fact determination that an employee was incapacitated is sufficient to show that an employee was entitled to FMLA leave. In an unpublished opinion, *Nawrocki v. United Methodist Retirement Communities, Inc.,* 174 Fed.Appx. 334 (6th Cir. 2006)(unpublished), the Sixth Circuit Court of Appeals suggested that a doctor's December letter would have sufficed to show that the plaintiff was incapacitated during certain days in October and November; however, unlike in the instant case, the doctor in *Nawrocki* had examined the plaintiff during October and November. Here, Dr. Dionisio's determination that Plaintiff was incapacitated and unable to work on December 21 and 22, 2005, and

9

January 3, 2006, was based on nothing more than Plaintiff's recounting of his symptoms on those days. Dr. Dionisio did not examine Plaintiff until January 5, 2006.

This Court finds the reasoning in *Brannon* and *Nawrocki* more persuasive. Because there is no evidence, aside from Dr. Dionisio's legally insufficient testimony, that Plaintiff was incapacitated and unable to perform the functions of his position on December 21 and 22, 2005 and January 3, 2006, the Court concludes that Plaintiff's absences on those days were not worthy of FMLA protection. Accordingly, NMHG's termination of Plaintiff's employment, pursuant to Plaintiff's final warning regarding absenteeism, did not violate the FMLA.

As Plaintiff was not entitled to FMLA leave, the Court need not address the issue of whether notice of intent to take FMLA leave was given. Additionally, although Defendant briefly speaks to Plaintiff's possible retaliation claim, Plaintiff makes clear in his response that he is not bringing a retaliation claim against Defendant; therefore, the Court will not address such a claim.

IV. Conclusion

Accordingly, and for the foregoing reasons, **IT IS ORDERED** that Defendant's motion for summary judgment [Record No. 38] be, and the same hereby is, **GRANTED**.

This the 31st day of July, 2007.



**Signed By:**

**_Joseph M. Hood_** ꭍᴊᴍн

**United States District Judge**

11